May it please the court, I apologize in advance for the quality of my voice. I'm recovering from a cold which seems to be aggravated by the flight I took yesterday. Please let me know if you have any trouble hearing me. Not Bourbon Street though. What's undisputed in this case is that Prospect had a money judgment against Michael Endman before the Mutual of Omaha Bank extended any credit, but Prospect did not abstract or record the judgment until after MOB made its loan and took steps to perfect its collateral interest. What the bank and the district court believe is that there is a bright line rule enunciated by Texas law that says that because Prospect did not abstract and record its money judgment before MOB made its loan, that Prospect cannot take priority over MOB. They've adopted a bright line rule. In fact, the district court in its decision wrote, quote, it is irrelevant what MOB could have discovered if it searched for more information because Prospect did not record its judgment until after MOB had loaned the money and perfected its security interest in the collateral. Did you have any evidence showing that Mutual was in bad faith, that they knew about the fraud? There's quite a bit of evidence in the record showing that they had actual or constructive notice. And constructive notice under the Hahn case and the Flack case that are discussed in our briefs is sufficient. What was the actual notice? The actual notice that they had as part of his loan application, well, there are two things. First, as part of his initial loan application, Mr. Endman disclosed his tax records, which include three references to a breach of contract dispute. That was given to Mutual of Omaha. There was a lawsuit pending or at least a dispute pending? At least a dispute pending. That is clear from the tax records they collected. Secondly, the Mutual of Omaha loan did not occur only once and then done. An initial loan of nearly $2 million was made, a subsequent loan of $300,000. That loan was subsequently refinanced into a small business administration-backed loan. And the refinancing occurred after Mutual of Omaha had been subpoenaed for its records in connection with prospects, fraudulent transfer case against the Endmans and their co-defendants. Do you think a mortgage holder doesn't get a good lien if they know that the borrower has a lawsuit pending against him? If they know that the – this is not a question of a lawsuit pending. The question is did they know of the prior judgment? And under Section 13.001 of the Texas Property Code, they do not have a good lien if they take with notice that there is a money judgment against the debtor. What's your authority for that? My authority for that is, first of all, Section 13.001 of the Texas Property Code, which is titled Validity of Unrecorded Instruments, and it addresses when an unrecorded instrument can be binding against a subsequent purchaser or mortgager. And it says that an interest in real property is void as to a creditor who takes without notice of the instrument. That's 13.001A. And 13.001B clarifies that notice is important, that even an unrecorded interest is binding on – The specific law – They may have known there was a money judgment up in New York, but where's the legal interest in the property that they're informed of? Well, the legal interest in the property is created as soon as there is any interest. This goes back to the Ellis case, the Texas Supreme Court decision from 1886, which is cited in the appellee's brief on page 20. The Ellis decision makes clear all creditors have a general unsecured right to the property of the debtor. It says all creditors have the same right to have their debts paid out of the property of the debtor. Unsecured right, though. Unsecured, and it continues, unless by contract with the debtor or by legal process one or more acquire a right to be paid out of the proceeds of some particular property or to have some particular thing. And that's the question here. As soon as Prospect had a money judgment, it was an unsecured creditor. As soon as M.O.B. handed money over to the Edmonds, it was also an unsecured creditor. They both had to take some steps, some legal process by which they could take priority, and that is where M.O.B.'s claim fails because Section 13.001 prescribes the legal process by which a bank may take priority over a prior unrecorded instrument, and it specifies very clearly that it must take it without notice or else the unrecorded interest is binding upon the bank. And that is how the Texas appellate courts have applied Section 13.001. If there is one case that the panel reads, should read in this matter, it is the Noble case. In the Noble case, there was a default judgment against an individual similar to the judgment that Prospect had against Mike Edmond in this case, and the allegation was that despite the fact that that judgment was never abstracted and recorded, that nonetheless, Noble mortgage should be charged with actual or constructive knowledge of the judgment. But the Noble court also said to create an enforceable lien against real property owned by the judgment debtor, the judgment creditor must comply with the requirements of Chapter 52. And that's correct. It said that, with respect to a lien. But there is a difference between a general unsecured interest and a lien. And what Section 13.001 says is that you can't get that lien. You cannot receive priority unless you comply with the statute, which means you take without notice of the unrecorded interest. And in the Noble case, after the section where they say that the abstracting judgment statute is irrelevant because the judgment was never abstracted in that case, they then ask the question, and there is an entire section on it, is there other evidence to support a finding of notice? And in the very first paragraph of that section, this is on page 82 of the Noble decision, the court addresses whether there was anything that would put Noble on inquiry notice of the interest held by financial holdings. Financial holdings was the holder of that default judgment. The Texas Court of Appeals acknowledged that is an interest in the property of the borrower. And they then go on to assess, based on all of the facts that were presented after a full bench trial of the issues, whether there was evidence of actual or constructive knowledge. And only after assessing all of that evidence did the court come to the conclusion that there was no evidence. They said they held that none of the evidence pointed to was evidence that would put a mortgagee or purchaser on inquiry notice that an unrecorded money judgment in the county court of law records existed. Rather, the evidence conclusively demonstrates that Noble took its interest in good faith. And therein lies the rub. When the Texas courts apply section 13.001 to a case in which there is an unrecorded money judgment, as in Noble, they look at it on all of the facts. They review the record. And summary judgment is only appropriate if there is no dispute of material fact as to notice. The Noble case came down in favor of the mortgager. But it came down in favor of the mortgager after taking all of the evidence into account and finding that it conclusively established that there was no notice. Now, in this case, discovery was severely curtailed. A discovery schedule of 15 months was initially entered. But at the very beginning of discovery, the day before the first conference, Mutual of Omaha Bank filed its motion for summary judgment. And prospect asked for an extension, but it was only granted an extension until January of 2014. So before it had the chance to oppose that motion for summary judgment, only about two months of the 15-month discovery period had elapsed. And prospect preserved its objection and asked for the consideration of the motion to be delayed. And it's time to oppose to be continued until discovery was closed. When was your judgment entered? Which judgment? The fraudulent transfer judgment or the initial money judgment against Michael Henman? Both of them. The initial money judgment against Michael Henman was entered in New York on October 15, 2008. That's when the Southern District of New York confirmed the judgment. And the fraudulent transfer action, the final judgment was entered on December 17, 2012. Can you abstract the judgment? We abstracted the judgment, then filed it in January of 2013. It was recorded in February 4, 2013. This is a factual specific question. Recorded in what county? I believe we've recorded the abstracted justice in several counties. I'd have to check the record to see what is here. The land that has the mental rights, to your knowledge, is in Harris, Shelby, both? You recorded in both? To the best of my knowledge, it's in Harris County, but I could be wrong on that. I don't have that fact at hand. I know that the Kickapoo Kennels land is near Houston. And did you ever record any writ of execution to get a lien on the personal property? I do not know the answer to that. We certainly have with respect to the real property. But you don't know whether you did trust or Kickapoo personal property? Not as I stand here today. But we certainly would have a general unsecured claim against that property as a result of this. Also in the record, when we've tried to collect in the past, the initial response by Kickapoo was to file bankruptcy, which MOB, a mutual of Omaha Bank, participated in in an effort to take priority over all of that. And there was an issue in the court below which came up on reconsideration about whether the court appropriately dismissed the entire case as to personal as well as real property, because the statute by its terms refers only to real property interests. That's not an issue that I think we need to have decided up here. Just to clear up one little minor discrepancy, I believe at one point the district court may have mistakenly said that it was filed for record February 4th of 2012, and that should be 2013. That is correct. There's no dispute about it. It was 2013. It couldn't have been 2012. It was, in fact, 2013. So the argument that Mutual of Omaha Bank had notice of the money judgment before the refinancing in 2012 relies on the 2011 subpoena to Mutual of Omaha Bank in the fraudulent transfer action seeking to unwind the transfers that sought to evade the money judgment. What I don't get is how you had any or your client had any interest in any particular property before they recorded. You're correct. The law that Mutual of Omaha Bank relies on is very clear. To have a priority lien on particular property, you have to go through the steps prescribed by law. And until February 4th, 2013, Prospect did not abstract its judgment or record it. So until that point, there's no existence of a priority lien against all subsequent creditors. However, what is also clear is that as of 2008, Prospect had a general unsecured property interest in all of Mike Enman's property. Unsecured interest. Right. And for Mutual of Omaha Bank to accede to a higher priority interest, to take priority, they must follow Section 13.001, which says they must take without notice. And the Flack case and the Hahn case have clarified that means either actual or constructive notice. And every time that we've – So would you urge the equitable argument behind Flack to the district court? The – not specifically. Did you – I don't think you put it in your principle brief here either. No. Flack we raised, again, on reply because it is discussed so heavily in the Noble case that both parties related to. But the Flack position is – it is encompassed within Noble and Hahn. Both look at the equity. The Hahn case, certainly. The Hahn case is a perfect example of the danger if the doctrine of Mutual of Omaha Bank proposes we're taking to its extreme. Because in the Hahn case, you had knowing and deliberate circumvention of a prior existing right based on a known technical defect. In that case, the judgment was abstracted and recorded, and that was good for 10 years. And then just 10 days after it expired, there was a sham transaction, allegedly, between the owner and a company put together with some of his family members in order to defeat the interest relating to the prior abstracted interest. Now – Your argument is that if a bank has a borrower who wants to mortgage his home or whatever for a loan, and you run – and the bank runs a credit check, and they say, see, he's got a 5-year-old judgment out there, they can't get a good mortgage on that house. They will take it subject to the prior unrecorded interest under Section 13.001B. That's correct. And the – And your best authority for that is? My best authority for that is the Noble case where it addressed whether there was notice of the prior unrecorded judgment. And in that case, it found that there was not. But in this case, there certainly is evidence that a trier of fact could use to determine that there was constructive or actual notice. Mike Enman left blank the questions on his form that asked, are you subject to any prior money judgments? That's exactly what happened in Flack when the banker went down – You described Mutual of Omaha as a, quote, willing accomplice in the fraudulent transfer scheme, but you had no record support for that. What's the specific record citation for that proposition? By 2012, they certainly did because – What's the record support for them being a willing accomplice in a fraudulent transfer scheme? The record support is that they had notice of the money judgment when the subpoena came in 2011 before refinancing in 2012. Before that, to the extent they had notice, it was either actual or constructive. And the evidence of failing to keep or to either make or preserve their LexisNexis search, which their own credit policy required in a loan of this size, of failing to follow up on the multiple references to breach of contract dispute in the tax filings submitted by Mike Enman, and the failure to follow up on the points that he They all create issues of disputed fact. You have a red light. Yes, I do. Thank you very much. Thank you. Okay, Mr. Dove. May it please the Court. I'm Chris Dove on behalf of Mutual of Omaha Bank. And this truly is an appeal that is resolved by one undisputed, long-settled principle of Texas lien law. As this Court has noted this morning, a judgment creditor holding a money judgment has no right to be paid out of any particular property of the debtor for that reason. Many cases since then have noted that if you wish to have any sort of enforceable lien at all, you must take other steps. You must either record an abstract of judgment or, and this is a principle that didn't get briefed because it's irrelevant here. It never happened. You can actually get rid of execution and have an officer levy on the property. But one of those two things must happen. What do we do with 13.001 without notice? 13.001 only applies to an unrecorded instrument that contains a conveyance of real property or an interest in real property. A money judgment is not an instrument conveying an interest in real property. It conveys no interest in any property whatsoever. The abstract of judgment is the thing that creates that interest. And this is a distinction that my colleague glosses over consistently in talking about the case law, but it's one that's critical for this Court to notice. In Hahn, which he has just talked about, Hahn involved a prior abstract of judgment that had gone dormant and was ultimately revived by the Court. Fine. You created the interest as you were supposed to. Black is a little bit harder, the cow case. I don't think Flack is harder. It's more obscure. But the legal principles are the same because everybody agreed that the cows belonged to the petitioners. There's no doubt. Well, the problem was that they were not branded, but it was undisputed that the cows in dispute did not belong to the person that had taken out the mortgage. And the question was, given that it's undisputed that somebody has a prior interest in this personal property, the cattle, now you start to look at whether somebody that took the mortgage after that had knowledge of it. And apparently, in Tulia, Texas, in 1950, if you see unbranded cattle, that's suspicious. I will take the Texas Supreme Court's word on that. That is not what we're dealing with here because they did not have a prior interest in any property of Michael Lindman. Noble mortgage is, I think, the case that is most dispositive of this case. When read correctly and fully, one thing that Mr. Huff has done is he keeps saying it was about notice of this unrecorded default judgment. In that, he is mistaken. The distinctive point of noble mortgage is whether they had notice of a return of execution, remembering that under Texas law, it is a quirk that you may create that lien in one of two ways. Through the abstract of judgment that was belatedly filed in this case or through getting a writ of execution, having an officer levy on the property. In that case, the chain of events was default judgment, writ of execution, sale of property, recording of mortgage on property by noble, and then the recording of the constable's deed because the only thing anywhere in any recording system that could have possibly given noble mortgage notice was the return of execution filed in the county court at law. The question was, does that give the mortgage or notice? Held, absolutely not. You are not required to even go hunting for information outside the ordinary chain of title, and certainly not in the county court at law. That's not where you keep real estate records. And then, this is the part that is devastating to their position. When the petitioners had complained, but that leaves a gap in the law, they said, there's no gap. File an abstract of judgment. That's what it's there for. That's how you protect your interest in these cases. Had you done that, none of this would have come up. We're not going to distort the law to give you a remedy when you already had one, which is exactly the problem here. They had a remedy. They had many remedies that they chose not to follow. They didn't record the judgment. They didn't report it to the credit agencies. They didn't file financing statements. They didn't register it even in the Southern District of Texas and try to get a writ of execution. This is they had the license, not the deer. That's right. They had a hunting license and not a deer. That is, under Texas law, what an unabstracted money judgment is. When they respond sort of pithily, recordation doesn't trump knowledge, your answer would be it exactly does. Well, it would be more nuanced. Knowledge of what? The interest. It has to be a preexisting interest. Right. There has to be an interest. Otherwise, there's nothing to know. That principle disposes of the entire case. When we move for summary judgment, and this is a touchy issue, we vehemently deny that we did anything wrong in issuing this loan. We much prefer prospects' arguments that it made during the fraudulent transfer case when it called us one of Michael Inman's victims that was utterly tricked by him. Now that they are claiming we're somehow collaborating with him because we should have found something through a highly one-sided description of the record, we move for summary judgment under fraudulent transfer law. But they came back and said, no, no, no, we're not pursuing anything under fraudulent transfer law. This is under ordinary title law, and we intend to show that you should have had notice of our money judgment. I remember when we received that, the associate coming into my office and saying, can you believe this? That means they just pleaded themselves out of court. And that is precisely what they did. I think because having taken the vigorous position that we were not involved in any fraudulent transfer, they had no option other than to try to say, well, maybe a money judgment is more than every other case has said it is. But it's not. And the same principle applies to the refinancing of the 2010 loan in 2012. There's two problems with this argument as well. The first is the abstract of judgment was recorded in 2013. It does not matter. They had no interest until after the refinancing, and so we don't even have to get into it. If this court wanted to, I recognized as I was going back through the briefs and preparing for today that it's probably not sufficient to just say they have no law explaining why this would matter that we refinanced in 2012 a loan that was in 2010. If this court is looking for authority, a good case is Shepard v. Interbay Funding, 305 Southwest 3rd, 102, 2009 First District case. Explaining the universal principle, it's based on the restatement that when a lender refinances a mortgage and exchanges the same debt for another debt in one transaction, the prior lien priority is maintained. That's why we were flabbergasted. Why on earth do you think it even matters that we refinance this to the original loan that had been intended all along, one in which the Small Business Administration was satisfied? The same principle takes care of that. The same principle also takes care of their complaints about discovery. Simply put, there is only one fact under Texas law that matters in this case. When was the abstract of judgment recorded? February 4th, 2013 is the answer. We are done. There is no need for further discovery. There will be nothing to undermine the recording date. The abstract of judgment is in the record. To address a question you had asked, Judge Higginson, all I know is that the Harris County abstract of judgment is in the record. If it was recorded in other counties, that's not in the record to my knowledge, and I don't know if it was or not. I don't think it's relevant under this law because everybody agrees there is not an abstract of judgment filed before we perfected our liens in 2009 and 2010. And you did that in Shelby County? Yes, I believe so. Furthermore, on this discovery that they're complaining about, we laid out in our brief, this Court has repeatedly held, if you object to the fact that somebody has moved for summary judgment before the end of the discovery period, Rule 56D is your remedy, not waving your hands and saying, but I still have more time. You have to lay out precisely what it is that you think you need and why it will make a difference. They have only ever tried to make that claim, that Rule 56D claim, about one category of information, electronically stored information. The magistrate judge found, based on our filings, that we had disclosed and provided everything we had. There is no other form other than what we gave. Thousands of pages of documents, our entire loan file, upon which they deposed four witnesses, everybody that had any knowledge about the loan. And they didn't object to the magistrate's ruling. So it is now binding on the District Court and on the Court of Appeals. As the District Court noted, you say you have this Rule 56 motion for more discovery, but the magistrate's already overruled that. And they've identified nothing else that they need. They've received everything they needed. It was irrelevant to begin with. And so I think it really is that simple. You said a few minutes ago that you think Noble says everything that needs to be said. If we were to agree with your position in this case, and I'm not saying we will or we won't, if we were to agree with that, in your view, are there any loose ends in Texas law that need to be reconciled or tied up here, or is Noble absolutely all that anyone needs to understand the law in this area? I don't believe there are any loose ends. Certainly, in reading what I believe is every case on point, I didn't see anyone recognizing a dispute or an uncertain situation. Everybody to write on the subject has said a money judgment doesn't create any interest in any particular property of the debtor. I suppose in one sense this may be the first time that this particular fact situation has come up. But I believe this court will resolve it using settled law. It will not be making new law in any way. And if this court wants citations, Noble Mortgage is chock full of citations for every proposition of law that disposes of the case. Okay, Mr. Dove, thank you very much. Thank you. Back to you, Mr. Hooth. May it please the Court. The fact of the matter is that the Noble case did what Texas law requires. It assessed the notice. It assessed whether a judgment was abstracted and recorded. Finding that it didn't, it then moved on and it asked the question, is there other evidence to support a finding of notice? It addressed the question of inquiry notice, citing Hahn. It weighed all of the evidence produced through discovery in a bench trial and concluded only after doing so that there was no notice of the lender and that Section 13.001 did not apply. Notice of what? Notice of what? Notice of the prior unrecorded judgment. There's a reference in this section on page 82 of Noble Mortgage to the interest held by financial holdings. Financial holdings held a default judgment. That was the financial interest. Didn't Noble involve a return of execution? There was a return of execution in that case. Wasn't that the issue, whether it had notice of that? Certainly not, according to, at least not based on the discussion that's in this case. The facts that are pointed out by the Court as relevant are whether Noble required a credit report or payment history, whether it knew that in two-and-a-half years there had been many transfers back and forth between parties, or whether the applicant filled out part of the application asking whether he was party to any judgment. These are the facts that they cited, and they found that based on the evidence they were not supported. But it certainly did not say this is related solely to a return of execution. That is a gloss that my opponent has put onto the record. In fact, if you read the last section of Noble, you'll see that it clearly assesses whether there was actual or inquiry notice. Of course, I asked Mr. Dove about 13.001 because you had mentioned it in his statement was that that section applies only to instruments that convey an interest in property, and that's not what we have here. What is your response to his representation? My response to that is that the Ellis case is absolutely clear that any interest includes a general unsecured interest in any property belonging to the debtor. I think that is undisputed. It doesn't have to be a conveyance. It does not have to be a conveyance, and that is why the Noble Court assessed whether an unrecorded judgment was adequately disclosed or was noticed. Does 13.001 apply to transfers of property? 13.001 lists precisely what it applies to, and it applies to a conveyance of real property, an interest in real property, which would include a general unsecured interest, or a mortgage, or a deed of trust. That's a gloss you're putting on it. Well, see, that is where there's no case that Mr. Dove has cited or the Mutual of Omaha Bank has pointed to to say that a judgment does not create an unsecured interest in property. In a particular piece of property? He cited the Ellis case. The Ellis case says the unsecured interest is in all property, and if you want to perfect an interest in a particular piece of property, you've got to go through legal process. The legal process is 13.001, and that says that you cannot take it without being subject to the prior interest, which could include an unsecured money judgment, if you have notice of the instruments. See, the Texas legislature has said if you want to step up as a lending bank and take priority over a prior unsecured creditor, then you must follow this law, and this law says you cannot have notice. And Hahn and Flack and Noble address inquiry notice and constructive notice. The central question in this case is did Mutual of Omaha Bank comply with Section 13.001? And the question for discovery is, is there evidence showing that they were on actual or constructive knowledge that there was a prior money judgment which created an unsecured interest, even prior to whether it was abstracted or recorded? The evidence already showed, and is in the record below, that Mutual of Omaha Bank violated its own credit policy contrary to the assertions in the affidavit by its corporate representative in support of its motion for summary judgment, that it either did not search or did not keep the records of a LexisNexis search that would have turned up the prospect money judgment, that it ignored red flags in the loan application, that it ignored specific references to a breach of contract dispute in Mr. Enman's own tax returns provided as part of Mutual of Omaha Bank's due diligence. And Mutual of Omaha has not cited a single case stating the prospect never had any interest as soon as it got that money judgment. It had an unsecured interest. For Mutual of Omaha Bank to trump that interest, it had to follow Section 13.001, and to determine whether it followed Section 13.001, the court was required, as the court in Noble did, to assess the facts and determine whether Mutual of Omaha was on actual or inquiry notice of the preexisting judgment. Thank you. Okay. Thank you, gentlemen. We have your case.